IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.

SUN CONSTRUCTION COMPANY, INC., a Colorado corporation,

**Plaintiff(s)**

v.

TORIX GENERAL CONTRACTORS, LLC, a Colorado limited liability company f/k/a Alliance General Contractors, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and, ST. ANDREWS/ ALLIANCE JOINT VENTURE, a joint venture.

**Defendant(s):**

## COMPLAINT

COMES NOW the Sun, Sun Construction, Inc. ("Sun") by and through its attorneys, Lichtenfels, Pansing & Miller, P.C., and for its Complaint against Defendants, states and alleges as follows:

### JURISDICTION, VENUE and PARTIES

1. Sun is, and at all time pertinent, was a corporation duly organized and existing under the laws of the State of Colorado, with its principal business address of 4004 Mark Dabling Blvd., Colorado Springs, Colorado 80907.

2. Defendant St. Andrews/ Alliance JV (the "JV"), is, and at all pertinent times was, a joint venture comprised of Defendant Torix General Contractors, LLC ("Torix") and St. Andrews Construction Services, Corp. ("St. Andrews").

3. Torix, formerly known as Alliance General Contractors, LLC is, and at all times pertinent, was a limited liability company duly organized and existing under the laws of the State of Colorado, with its principal address of 5045 List Dr., Colorado Springs, Colorado 80919, acted as a general contractor on the Project, as part of the JV, which is the subject matter of this action.

4. Defendant Travelers Casualty and Surety Company of America ("Travelers"), is, and at all times pertinent was, a corporation duly organized and existing under the laws of the State of Connecticut and was authorized to transact business in the State of Colorado. Travelers supplied a labor and material payment bond to the JV on the subject Project.

5. Venue is proper in this action in State of Colorado, as the Project is located in the State of Colorado.

6. Jurisdiction is proper in the Federal District Court for the District of Colorado, as the claim against Travelers is being brought pursuant to 40 USCS §3131 through 40 USCS §3134, known as the Miller Act.

7. Jurisdiction of all other claims is proper pursuant to 28 USCS §1367, the court's supplemental jurisdiction, as the state claims against the JV, Torix, and St. Andrews form the same case or controversy as the claims against Travelers and arise out of the same common nucleus of operative facts.

## GENERAL ALLEGATIONS

8. Sun acted as a subcontractor of the Defendant St. Andrews/ Alliance JV (the "JV"), a joint venture comprised of Defendants Torix General Contractors, LLC ("Torix") and St. Andrews Construction Services, Corp. ("St. Andrews") (Torix, the JV, and St. Andrews are collectively referred to herein as the "JV Group"), and furnished construction services which were used in, consumed and otherwise incorporated into a project known as the Phase 2 Construction, Site Utility Distribution System and South Underground Tunnel for the National Institute of Standards and Technology ("NIST") Boulder, Colorado (the "Project").

9. Defendant JV entered into and executed a written contract with NIST (the "Contract"), by the terms of which Defendant JV agreed to furnish all necessary labor, material and equipment, and to perform all work required for the construction for the subject Project.

10. On or about August 25, 2005, Sun and Defendant JV entered into a subcontract, wherein Sun agreed to perform site demolition and clearing, utility tunnel excavation and backfill, install a storm drain system with pre-cast box culvert, install a sanitary sewer system, fine grading, relocation of fire hydrants, taps and covers, and excavate and backfill for a cooling tower (the "Work").

11. The Work was originally scheduled to be completed by August 17, 2006.

12. The Project quickly began experiencing delays.

13. As a result of these delays, Sun began experiencing increased costs normally associated with construction delays.

14. In an effort to resolve the issues created by the delays, Sun and the JV entered into a Settlement Agreement and Mutual Release dated April 6, 2006 (the "Settlement", a copy of which is attached hereto as **Exhibit A**), wherein Sun and the JV adjusted the Subcontract

value to $1,687,342.00, set a new Project schedule, and released each other from any and all claims "occurring before the effective date" of the Settlement Agreement.

15.   The new Project schedule (the "Schedule", attached hereto as **Exhibit B**), was agreed to by both Sun and the JV, and reflected a new Project completion date for the Work of November 29, 2007 for Sun, and overall project completion date of January 29, 2007.

16.   The Project has experienced delays again, and the Schedule has been adjusted to reflect a final completion date sometime in February, 2008.

17.   Throughout the summer, fall and winter, the schedule of the Project continued to slip, and the Project again fell behind schedule.

18.   In or around the late summer or early fall of 2006, the JV failed to make payments to Sun for Sun's work on the Project, including but not limited to, Sun's rental of Trench Boxes, which Trench Boxes were a vital and necessary part of Sun's work under the Subcontract.

19.   Originally, Sun was told that its work would be performed by way of Open Excavation, which is how Sun bid the job.

20.   Open Excavation would not require the use of Trench Boxes

21.   However, after arriving on the Project, the JV informed Sun that use of the Trench Boxes would be necessary in order to construct the utility tunnel, for which Sun was responsible for the excavation and backfill.

22.   Despite providing nearly 270 linear feet of Trench Boxes within which the JV might begin construction of the utility tunnel, the construction of the tunnel was severely delayed, as the JV continued to experience water leakage into the tunnel, preventing its construction and approval.

23.   This water leakage into the tunnel was not the fault of Sun.

24.   Throughout this period of delay on the utility tunnel, Sun was being charged for the rental of the Trench Boxes.

25.   Moreover, Sun also experienced other damages associated with the delay in the progress of the construction of the tunnel, including rental of the Trench Boxes, labor costs, and the costs associated with its idle equipment (Sun was not able to put its equipment on other jobs, or even bid other jobs involving the equipment, as the equipment was required on the NIST Project).

26.   Given the remote location of the Project relative to Sun's office, Sun also incurred continuing charges for the lodging of its employees.

27.   Fuel costs also increased during the period of delay, damaging Sun, as Sun used approximately 400 gallons per day in fuel (when Sun was actually able to perform its work).

28.  Due to the delay in the Project, Sun was forced to perform its Work in the winter, causing Sun to suffer inefficiencies in its labor and work, thereby increasing its costs on the Project.

29.  The Trench Boxes were being used to assist the JV in the creation of a tunnel. Eventually, Sun had placed and installed approximately 270 linear feet of the Trench Boxes.

30.  Originally, after Sun rented the Trench Boxes, the JV was supposed to have the Tunnel ready for backfill within sixty (60) days of the installation of the Trench Box.

31.  In no instance was the Tunnel ready for backfill within this time period. In some cases, almost a year has elapsed since the Trench Box installation.

32.  The rental costs of the Trench Boxes eventually exceeded the purchase price of the Trench Boxes.

33.  In January or February of 2007, Sun presented the JV with a proposal from Trench Shoring, Inc., the provider of the Trench Boxes, wherein Trench Shoring would accept $241,000.00 in satisfaction of all amounts owed on the Trench Boxes then and into the future.

34.  Sun presented the proposal to the JV (Sun did not have the funds available to accept the terms), and the JV denied the request to accept the Proposal.

35.  Acceptance of Trench Shoring, Inc.'s proposal would have greatly mitigated damages, as the bill for the Trench Boxes was last calculated at $458,812.83.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract-Action on the Travelers Bond)

36.  Sun incorporates herein by reference the allegations contained in paragraphs 1 through 35 above as paragraph 36.

37.  Pursuant to 40 USCS §3131 through 40 USCS §3134, the JV as principal contractor and Travelers as surety, did execute a Payment Bond conditioned that the JV would promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in the Contract, a copy of which bond is attached hereto as **Exhibit C** and made part hereof.

38.  The Payment Bond attached hereto as **Exhibit C** was thereafter delivered to NIST and accepted by it, and the Contract was awarded to the JV.

39.  Thereafter, on or about August 25, 2005, the JV entered into a subcontract with Sun (the "Subcontract"), whereby Sun agreed to provide the Work required under the terms of the Contract.

40. Sun has performed all terms and conditions of its subcontract and of the bond required on its part to be performed.

41. Sun is an intended beneficiary of the Payment Bond, and is therefore entitled to receive from Defendant MJV and Travelers, jointly and severally, the unpaid balance due and owing for labor, materials and services provided by Sun as referenced above.

WHEREFORE, Sun prays as hereinafter set forth.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract- JV and Torix)

42. Sun incorporates herein by reference the allegations set forth in paragraphs 1 through 41 above as paragraph 42.

43. In accordance with its Subcontract, Sun agreed to and provided the necessary Work required under the Subcontract, and fulfilled all of its obligations under the Subcontract with Defendant JV for the Project in a skilled and workmanlike manner.

44. Defendant JV breached its Subcontract agreement with Sun by failing to fulfill its express and implied obligations, duties, and covenants under said Subcontract, which obligations, duties, and covenants include but not limited to the following:

   a. implied covenant of adequate design, specified with clarity;

   b. covenant that contract documents were adequate and complete;

   c. covenant that the construction schedule or completion date set forth in the Contract and Subcontract and Settlement documents were attainable;

   d. covenant that Defendant JV would perform its project administration functions in a timely and objective manner, including,

      i. performing objective inspections when required,

      ii. the duty to cooperate and coordinate ongoing administrative functions with NIST representatives and other subcontractors and trades,

      iii. the duty to respond in a complete and timely fashion to Sun's inquiries or other ongoing administrative functions, and

      iv. the duty to fund the work or otherwise coordinate with NIST or other appropriate owner's representatives an appropriate equitable adjustment for inadequate plans and specifications and delayed and disrupted performance.

45.     As a result of Defendant JV's contractual breaches, Plaintiff has incurred severe damages from the resultant delay, disruption, labor inefficiencies, and related costs.

46.     The full extent of Plaintiff's damages are not known at this time, but Plaintiff has calculated, inclusive of its unpaid progress billings and retention, that its damages are approximately $2 million as of the filing of this Complaint. This damage amount is expected to increase, as Sun's damages continue to increase.

47.     Defendant JV consistently and continually restricted, obstructed and actively interfered SUN's access to work areas that was not contemplated nor planned at the time Sun entered into its agreement with Defendant JV.

48.     Specifically, Defendant JV restricted Sun from commencing the progress of the excavation and backfill of the Tunnel.

49.     Defendant JV also actively interfered with the performance of Sun's work and delayed Sun's work under the Subcontract, including but not limited to the following interferences:

   a)   abandoned the contractually agreed upon schedule (via the Settlement Agreement);

   b)   refused to coordinate crews and work among the subcontractors (specifically, the work of the water-proofer in the Tunnel) which kept Sun from performing its work;

   c)   failed to accelerate the performance of its other subcontractors whose work disrupted and delayed Sun;

   d)   refused to pay Sun for work performed;

   e)   refused to correct deficiencies in other subcontract work which precluded Sun's timely commencement of its Contract Work in certain areas;

50.     Defendant JV also ordered Sun to perform work and incur costs for additional engineering, material and installation costs associated with the its Work with respect to the Tunnel.

### THIRD CLAIM FOR RELIEF
(Quantum Meruit- All Defendants)

51.     Sun incorporates herein by reference the allegations set forth in paragraphs 1 through 50 above as paragraph 51.

52.     Sun was ordered to remain on site despite the fact that conditions precedents to its Work were not ready, constituting extra work.

53. Sun performed this extra work as directed by Defendant JV with the expectation it would be compensated for the costs associated with the extra work.

54. Sun experienced delays and disruption damages due to these completely unforeseen and unexpected changes in work, inclusive of the delays caused by Defendant JV and its subcontractors.

55. At the time of contracting, neither party could reasonably foresee SUN conducting work wholly outside the scope of the Scope of Work as defined in the Subcontract.

56. Sun conferred a benefit on Defendant JV via its extra work.

57. Defendant JV realized the benefit of Sun's extra work.

58. Sun was damaged in the reasonable value of its extra work in an amount to be proven at trial.

WHEREFORE, Sun prays as hereinafter set forth.

(1) Enter judgment in its favor and against Defendants Torix General Contractors, LLC, St. Andrews/ Alliance JV, and Travelers Casualty and Surety Company of America, jointly and severally, as requested in Sun's First and Second Claims for Relief, in an amount to be established at trial, together with interest thereon at the highest rate permitted by law, plus all costs and fees associated with the commencement and prosecution of this action;

(2) Enter judgment in its favor and against Defendants Torix General Contractors, LLC, St. Andrews/ Alliance JV, and Travelers Casualty and Surety Company of America, as requested in Sun's Third Claim for Relief, in an amount to be established at trial, together with interest, plus costs associated with the commencement and prosecution of this action; and,

(3) Order such other and further relief as this Court deems just and proper.

Dated: June 27, 2007

Respectfully submitted,

LICHTENFELS, PANSING & MILLER, P.C.

s/ Jeffrey C. Culbertson

Robert H. Miller, Esq.
Jeffrey C. Culbertson, Esq.
Attorneys for Sun

<u>Sun's Address</u>:
4004 Mark Dabling Blvd.,
Colorado Springs, Colorado 80907.