**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01355-LTB-MJW

UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF SUN CONSTRUCTION COMPANY, INC., a Colorado corporation; and
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,

       Plaintiff,

v.

TORIX GENERAL CONTRACTORS, LLC, a Colorado limited liability company f/k/a Alliance General Contractors, LLC;
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and
ST. ANDREWS/ALLIANCE JOINT VENTURE, a joint venture,

       Defendants.

_____

**ORDER**
_____

       This case is before me on Intervenor Plaintiff, Fidelity and Deposit Company of Maryland's ("Fidelity"), Motion for Partial Summary Judgment as to its Claim for Breach of Contract Due to Cardinal Change and Material Modification and its Claim for Declaration of Rights **[Docket # 134]**, Defendants, Torix General Contractors, LLC ("Torix"), and St. Andrews/Alliance Joint Venture's (collectively "Joint Venture"), Response Brief in Opposition **[Docket # 139]**, and Fidelity's Reply **[Docket # 145]**.  Oral argument would not materially assist the determination of this motion.  After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Fidelity's motion **[Docket # 134]**.

## I. BACKGROUND

The relevant facts alleged are as follows. The Joint Venture entered into a written contract with the National Institute of Standards and Technology ("NIST") to furnish all necessary labor, materials, and equipment, and to perform all work required for the digging of an underground tunnel ("the project"). Plaintiff, Sun Construction Company, Inc. ("Sun"), acted as a subcontractor for the project. Pursuant to an August 2005 contract with the Joint Venture, Sun agreed to perform demolition, excavation, backfill, clearing, and grading services, among others. Fidelity issued a subcontract labor and material payment bond to Sun ("the bond") covering Sun's work on the project up to the full amount of Sun's subcontract. The original subcontract value was $1,170,000.

The project experienced delays that increased Sun's costs. In April 2006, Sun and the Joint Venture renegotiated the subcontract. The value of the renegotiated subcontract was $1,687,342. More delays ensued and Sun's costs again increased. Sun eventually completed the project two years after the originally scheduled completion date, and at a cost to the Joint Venture of $2,040,522—approximately one million dollars over budget. Sun's own cost overruns—the large majority of which were not passed to the Joint Venture—exceeded seven million dollars. In addition, the Joint Venture assumed responsibility for work originally assigned to Sun at a cost to the Joint Venture of $3,330,205.

Among the costs attributable to the delay in completing the project, Sun was required to rent trench boxes from Trench Service Systems ("TSS")—an expense that was allegedly not anticipated. The Joint Venture failed to reimburse Sun for the trench box rentals. Sun failed to pay TSS. TSS filed a payment bond claim with Sun's surety, Fidelity. Fidelity paid TSS

pursuant to the terms of Sun's payment bond. Sun has not reimbursed Fidelity for these payments although it is required to do so under the bond terms.

Sun filed the present suit against the Joint Venture and Torix to recover its additional costs arising from delay and changes in the scope of the project **[Docket # 1]**. Sun claims the Joint Venture breached its contract by failing to pay Sun for the work it performed. A portion of the amount unpaid includes the amount Fidelity paid TSS for the trench box rentals.

Fidelity was granted intervention of right on November 26, 2007, and its Intervenor Complaint was accepted as filed on that same date [**Docket ## 16, 17**]. The complaint was amended on December 14, 2007. [**Docket # 24**]. As relevant to the present motion for summary judgment, Fidelity's third claim for relief alleges Torix and the Joint Venture breached the original subcontract with Sun by increasing the amount of work required and extending the schedule. Fidelity claims the resulting modifications significantly increased Sun's obligations under its subcontract, with a likewise increase in Fidelity's obligations as Sun's surety. Fidelity claims—as a result of these "material modifications" to Sun's subcontract—it is now exposed to surety liability more than seven times that originally negotiated. Fidelity argues it could not have contemplated the massive cost and time overruns and, accordingly, should be relieved of its obligations under the bond.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper

if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If the moving party does not bear the burden of persuasion at trial, it may satisfy this responsibility by identifying a lack of evidence for the non-movant on an essential element of the non-movant's claim. *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.* Accordingly, Defendants must show material facts in dispute by a preponderance of the evidence in order to defeat Fidelity's motion for summary judgment.

### III. ANALYSIS

Fidelity seeks summary judgment under the doctrine of cardinal change and material modification. Under this doctrine, a surety may be released from its obligations when "a material change between the principal and the sub-contractor, without the consent of the surety, results in prejudice to the surety's interest." *Golden West Constr. Co. v. Bernadot*, 304 F.2d 753, 756–57 (10th Cir. 1962); *see Chrysler First Bus. Credit Corp. v. Kawa*, 914 P.2d 540, 543–44 (Colo. Ct. App. 1996). Whether a change is cardinal is a question of fact that requires the court to analyze each case individually in light of the totality of the circumstances. *See Becho, Inc. v. United States*, 47 Fed. Cl. 595, 601 (Fed. Cl. 2000). Factors that may be considered include: (1) whether there was a significant change in the magnitude of work to be performed; (2) whether the change significantly altered the quality, nature, or type of work contemplated by the original contract; and (3) whether the cost of the work ordered greatly exceeds the original contract cost. *See id.* Regardless of the factors applied, however, the underlying question to be answered is "whether the modified job was essentially the same work as the parties bargained for when the contract was awarded." *See Air-A-Plane Corp. v. United States*, 408 F.2d 1030, 1033 (Ct. Cl. 1969). On the basis of the facts alleged and the evidence presented, I conclude questions of

material fact exist whether the changes in the subcontract between Sun and the Joint Venture were cardinal.

Fidelity argues this case is factually similar to *Peter Kiewit Sons' Co. v. Summit Construction Co.*, 422 F.2d 242 (8th Cir. 1969), in which the Eight Circuit held a subcontract was substantially breached by changes in the scope of the underlying project that increased the subcontractor's costs by 300 percent. *Kiewit*, however, was not postured within the summary judgment context. Accordingly, the Eighth Circuit asked only whether there was "sufficient evidence to find that the changes ordered . . . went so beyond the scope of the Subcontract . . . as to breach the Subcontract." *See id.* at 255. That is a fundamentally different question from the question asked at the summary judgment stage, namely whether—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *See Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The evidence—viewed in the light most favorable to the Joint Venture as the non-moving party and drawing all reasonable inferences in the Joint Venture's favor—shows material questions of fact exist whether there was a significant change in the magnitude of work to be performed and whether the change significantly altered the quality, nature, or type of work contemplated by the original contract. Sun ultimately built the same tunnel they originally were hired to build, and in essentially the same manner and location. *See* Expert Report of Richard Kerr [**Docket # 134-10**]; Deposition of Brian Labbe, p. 83 [**Docket # 139-4**]. Sun and the Joint Venture also anticipated the use of trench boxes in the event that the trench could not otherwise be constructed in a safe and stable manner. *See* Expert Report of Richard Kerr [**Docket # 134-**

**10**]. Accordingly, the evidence shows the trench—as ultimately built—"was essentially the same" as the one anticipated when the parties entered into the contract. *See Air-A-Plane Corp.*, 408 F.2d at 1033.

Turning to the third factor—whether the cost of the work completed greatly exceeded the original contract cost—it is undisputed that the completion of the trench was approximately two years behind schedule and one million dollars over budget. Fidelity argues the additional costs and scheduling overruns—which were indisputably significant—show any changes to the subcontract were "cardinal changes and material modifications" as a matter of law. Fidelity, however, provides me with no authority—nor does such authority appear available from my own research—supporting this position. Those courts considering the issue have indicated that cost or scheduling overruns—standing alone—are insufficient to show a cardinal change particularly where, as here, the work performed is otherwise substantially as anticipated. *See PCL Const. Servs., Inc. v. United States*, 47 Fed. Cl. 745, 804–06 (Fed. Cl. 2000) (discussing cases). Even where—as here—the ultimate cost of the project is more than double the original price and the completion of the project is delayed for more than one year, this is insufficient to show a cardinal change as a matter of law. *See id.* ("courts must look beyond simple arithmetic when assessing a cardinal change claim") (discussing cases).

The evidence presented—construed in the light most favorable to the Joint Venture—shows that the additional costs and delays Sun incurred in completing the project were not due to changes outside the scope of the original contract, but rather were due to Sun's failure to properly quantify its ability to deliver the agreed-upon work at the agreed-upon time. *See* Expert Report of Richard Kerr [**Docket # 134-10**]. Even if the additional costs were attributable

to the actions of the NIST or the Joint Venture, however, the subcontract provides for such overages when they are the result of additions or omission on the part of the "owner"—NIST here. *See* Subcontract Agreement [**Docket # 134-4**]. The evidence presented reasonably supports an inference that NIST was—at least in part—responsible for and acquiesced in the delays and increased costs. *See* Deposition of Ian McIntosh, pp. 186–87 [**Docket # 139-9**]. As I must assume for purposes of summary judgment that Fidelity reviewed and consented to the subcontract terms in connection with entering the surety agreement, any such additional costs cannot be considered a material modification. *See F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1491–92 (10th Cir. 1994).

## IV.  CONCLUSION

Accordingly, Fidelity and Deposit Company of Maryland's Motion for Partial Summary Judgment as to its Claim for Breach of Contract Due to Cardinal Change and Material Modification and its Claim for Declaration of Rights **[Docket # 134]** is DENIED.


Dated: October   15  , 2009.

BY THE COURT:


　　　s/Lewis T. Babcock　　　　
Lewis T. Babcock, Judge