**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01355-LTB-MJW

UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF SUN CONSTRUCTION COMPANY, INC., a Colorado corporation; and
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,

      Plaintiff,

v.

TORIX GENERAL CONTRACTORS, LLC, a Colorado limited liability company f/k/a Alliance General Contractors, LLC;
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and
ST. ANDREWS/ALLIANCE JOINT VENTURE, a joint venture,

      Defendants.

_____

**ORDER**
_____

This case is before me on Defendants, Torix General Contractors, LLC ("Torix"), and St. Andrews/Alliance Joint Venture's ("Joint Venture"), Motion for Summary Judgment on Plaintiff's Fourth Claim for Relief [**Docket # 135**], Plaintiff, Sun Construction Company's ("Sun"), Response [**Docket # 140**], and Defendants' Reply [**Docket # 148**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT Defendants' motion [**Docket # 135**].

**I.  BACKGROUND**

The relevant facts alleged are as follows. The Joint Venture entered into a written contract with the National Institute of Standards and Technology ("NIST") to furnish all

necessary labor, materials, and equipment, and to perform all work required for the digging of an underground tunnel ("the project"). Sun acted as a subcontractor for the project. Pursuant to an August 2005 contract with the Joint Venture, Sun agreed to perform demolition, excavation, backfill, clearing, and grading services, among others.

The project experienced delays that increased Sun's costs. In April 2006, Sun and the Joint Venture renegotiated the subcontract. More delays ensued and Sun's costs again increased. Among the costs attributable to the delay in completing the project, Sun was required to rent trench boxes from Trench Service Systems ("TSS")—an expense that was allegedly not anticipated. The Joint Venture failed to reimburse Sun for the trench box rentals. Sun failed to pay TSS. TSS filed a payment bond claim with Sun's surety, Fidelity and Deposit Company of Maryland ("Fidelity"). Fidelity paid TSS pursuant to the terms of Sun's payment bond. Sun has not reimbursed Fidelity for these payments although it is required to do so under the bond terms.

Sun filed the present suit against the Joint Venture and Torix to recover its additional costs arising from the delay and changes in the scope of the project **[Docket # 122]**. Sun claims Defendants breached the contract with Sun by failing to pay Sun for the work it performed. Sun also claims it is now unable to secure payment bonds for any future projects and, accordingly, that it has suffered lost profits due to Defendants' breach. Defendants move for summary judgment on the lost-profits claim.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party.  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)).  If the moving party does not bear the burden of persuasion at trial, it may satisfy this responsibility by identifying a lack of evidence for the non-movant on an essential element of the non-movant's claim.  *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined.  *See Celotex*, 477 U.S. at 322.  It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial.  *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, Sun must show material facts in dispute by a preponderance of the evidence in order to defeat Defendants' motion for summary judgment.

### III.  ANALYSIS

As the breach of contract claim at issue in this dispute arises under Colorado law, I first look to rulings of the Colorado Supreme Court to aid my analysis. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Colorado Supreme Court would rule. *Id*. In such circumstances, I must follow any intermediate state court decision unless other authority demonstrates the Colorado Supreme Court would decide otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id*. at 1574–75.

Defendants seek summary judgment on Sun's Fourth Claim for Relief for lost profits from an alleged breach of contract that caused Sun to lose its bonding capacity—a prerequisite for Sun to continue its government-contracts business. Defendant argues Sun fails to put forth sufficient evidence supporting each element of its lost profits claim under Colorado law. I agree.

The Colorado Supreme Court recently held that a claim for lost profits due to impaired bonding capacity must be analyzed like any other claim for lost profits. *See Denny Constr., Inc.*

*v. City & County fo Denver*, 199 P.3d 742, 747 (Colo. 2009). "The general rule in Colorado is that damages for lost profits may be awarded in breach of contract cases," so long as the plaintiff meets two requirements. *See id.* at 746. "First, lost profits are recoverable only if they can be proven with reasonable certainty. . . . [A] plaintiff seeking future damages must provide the trier of fact with (1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss. Thus, as long as the fact of future loss is certain, the amount of damages awarded may be an approximation. . . . [W]here there is sufficient reliable evidence that lost profits would have accrued but for defendant's breach, the jury should be permitted to assess the amount of the profits from the best evidence the nature of the case allows." *Id*. (internal formatting and citations omitted). Second—in addition to proving lost profits with a reasonable certainty—a plaintiff must prove the particular lost profits were objectively foreseeable by the parties at the time of contracting. *See id*. at 751.

In support of its lost profits claim, Sun submits the affidavit of its owner and president, Floyd Abeyta. [**Docket # 140-3**]. Abeyta states: Sun was profitable every year between 2002 and 2006, earning an average annual profit of $500,000; Sun had completed more than 200 contracts with the City of Colorado Springs ("Colorado Springs") and the Colorado Department of Transportation ("CDOT") prior to 2006, with the average Colorado Springs project being worth $2,000,000; subsequent to losing its bonding capacity in 2006, Sun has been awarded only five Colorado Springs contracts, each worth only $100,000; Sun is no longer allowed to bid on CDOT projects worth more than $600,000, and these projects previously amounted to 90% of Sun's work; Sun remains qualified by Colorado Springs to work on projects up to $4,000,000 in

size, but can no longer bid on such projects because it is unable to obtain a bid bond. Abeyta's statements regarding Sun's reduced profitability subsequent to losing bonding capacity are supported by financial statements prepared by Sun's CPA. [**Docket # 146-3**]. This evidence—viewed in the light most favorable to Sun as the non-moving party and drawing all reasonable inferences in Sun's favor—is sufficient to show the fact of lost profits. *See Roberts v. Holland & Hart*, 857 P.2d 492, 497 (Colo. Ct. App. 1993) (holding that, while "documentary evidence of profit loss is preferred when practical," lost-profit damages can be awarded "based on undocumented testimony by the plaintiff or other witnesses").

To fully meet the first inquiry under *Denny*, however, a plaintiff must show more than merely the fact of lost profits; he must also show "sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss." *See Denny*, 199 P.3d at 746. "[S]ummary judgment is appropriate when a non-moving party has neither identified expert witnesses nor designated documents that support a basis for computing his or her damages claims. In such circumstances, there is no competent or relevant evidence from which a jury could fairly estimate damages." *Terrones v. Tapia*, 967 P.2d 216, 218–19 (Colo. Ct. App. 1998). Sun's evidence is insufficient to meet this burden.

Neither Abeyta's affidavit nor the documents prepared by Sun's CPA refer to any specific projects—or the value of such projects—that Sun was qualified to bid on, but for its inability to bond. The report of Sun's damages expert, Demand Construction Services, Inc., likewise contains no reference to any specific projects Sun lost—or might have lost—and simply concludes Sun suffered "lost profits of $1,050,000 due to business impairment/loss of bonding capacity." [**Docket # 135-3**]. The report does not explain how the $1,050,000 figure was

reached, nor what documents were relied upon to reach that figure. Where an estimated damages amount is not based upon admissible evidence—or where, as here, no admissible evidence is submitted to support the claimed damage amount—"summary judgment [i]s appropriate insofar as it preclude[s] recovery of those damages." *See Terrones*, 967 P.2d at 219.

Even if Sun supported its lost profits estimate with admissible evidence, it would still be required under *Denny* to show its losses were "the foreseeable result of a breach at the time the contract was made." *See Denny*, 199 P.3d at 746 (citations omitted). The test for foreseeability is objective, focusing on whether—at the time the parties entered into the contract—the defendant knew or should have known that the lost profits would probably be incurred by the plaintiff if the defendant breached the contract. *See id.* at 751.

Sun argues that Defendants "are familiar with the bonding requirements of federal projects (obviously, or Defendants would not have obtained this Project). Similarly, Defendants are aware [of] the implications of having a claim made on a contractors' surety bond. In other words, the consequences of a claim on a bond are much more foreseeable." *See* Sun's Response to Defendants' Motion for Summary Judgment [**Docket # 140**]. Sun proffers no evidence supporting this argument, however, nor even the factual averments contained within. Instead, Sun asks the Court to hold as a matter of law that a material question of fact—specifically, whether lost profits due to impaired bonding capacity were objectively foreseeable by the parties at the time of entering into the contract—will always exists whenever the parties to the contract "are familiar with the bonding requirements of federal projects." Such a holding would be inconsistent with Colorado law, as noted by the Colorado Supreme Court in *Denny*. *See Denny*, 199 P.3d at 750–51. Accordingly—in the absence of any evidence showing the lost profits were

foreseeable in this case—summary judgment is appropriate.

## IV.  CONCLUSION

Defendants' Motion for Summary Judgment on Plaintiff's Fourth Claim for Relief [**Docket # 135**] is GRANTED.  Plaintiff's Fourth Claim for Relief is DISMISSED.

Dated: October   20  , 2009.

                                          BY THE COURT:

                                             s/Lewis T. Babcock
                                          Lewis T. Babcock, Judge